UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
STAR CABLE NA, INC.,

                Plaintiff,                    16 CV 4067 (SJ)

   v.

                                                                   <u>MEMORANDUM</u>
                                                                   <u>AND ORDER</u>

TOTAL CABLE USA LLC, *et al.*,

                Defendants.
-------------------------------------------------X

APPEARANCES

DANIEL JOHN LEFKOWITZ
320 New York Avenue
Huntington, NY 11743
(631) 692-4700
*Attorney for Plaintiff*

HOGAN & CASSELL
500 North Broadway, Suite 153
Jericho, NY 11753
(516) 942-4700
By:   Michael D. Cassell
       Shaun K. Hogan
*Attorneys for Plaintiff*

SATISH K. BHATIA
38 West 32nd Street, Suite 1511
New York, NY 10001
(212) 239-6898
*Attorney for Defendants*

JOHNSON, Senior District Judge:

This is an unauthorized publication or use of communications action brought pursuant to 47 U.S.C. § 605. Plaintiff's Second Amended Complaint ("SAC") alleges that Total Cable USA LLC ("Total Cable USA") and 1StopMedia and Entertainment, Inc. d/b/a Radiant IPTV ("1Stop") (collectively "Defendants") distributed programming services in contravention of Plaintiff's exclusive rights to air those programming services in the United States via Internet Protocol Television ("IPTV"). The services in question are Bangladeshi TV channels, specifically: 1) Independent TV, 2) Jamuna TV, 3) Channel 16, 4) My TV, 5) Asian TV, 6) Bangla Vision, 7) Ekushey TV, and 8) Somoy TV (collectively the "Exclusive Services"). Plaintiff seeks enjoinment of the Defendants from utilizing the Exclusive Services and monetary damages. Before this Court are motions for summary judgment by the Defendants. Based on the submissions of the parties and for the reasons stated below, both motions for summary judgment are **DENIED**.

I.   **Background Facts**[1]

Star Cable provides subscription video services to its clients through the internet via IPTV. Its services include hundreds of channels including the Exclusive Services listed above. Star Cable claims to have contracted with each of the Exclusive Services providers individually for the exclusive rights to distribute these channels in the United States and Canada. In exchange for the distribution rights, Star Cable has paid and continues to pay license fees to the content owners. Star Cable alleges that Defendants Total Cable USA and 1Stop each actively advertise and redistribute the Exclusive Services to their customers without authorization. (Dkt. No. 38 at ¶ 22.)

Defendant Total Cable USA was incorporated on October 20, 2013 and dissolved in May 2016. However, Star Cable brings the instant action on the premise that Total Cable USA continues to operate and distribute the Exclusive Services under the name "Total Cable BD."

Historical website data shows that a company holding itself out as "Total Cable" operated a website at the URL "totalcableusa.com," that sold subscription internet television packages similar to the model described

---

[1] Unless otherwise stated, all facts are taken from the complaint, the parties' submissions, and representations before this Court.

P-049

above as late as May 7, 2016. However, by at least August 17, 2016—shortly after Total Cable USA had dissolved—the same website had changed the logo on its homepage to instead read "Total Cable BD" and changed its contact email address to "info@totalcablebd.com." All other information on the website remained virtually identical, including the "About Us" description which begins: "Total Cable USA is leading IPTV providers to the Bangladeshi community in the USA and Canada."

An August 17, 2016 search revealed that the URL "totalcableusa.com" was registered to a man named Habib Rahman, at the phone number (646) 474-0418, and address 15 Westmoylan Lane, Coram, NY 1127. That URL is no longer operational, however, the URL "totalcablebd.com" was created in 2015 and registered to the exact same person, phone number, and address. Rahman was also found in a Southern District of New York lawsuit to be "a representative of Total Cable [USA] LLC." *Asia TV USA, Ltd. V. Total Cable USA LLC,* 2018 WL 1626165 (S.D.N.Y Mar. 29, 2018). Total Cable USA denies ownership of the website and claims that they never operated any website. (Bhatia Aff. at ¶ 11.)

Additionally, the physical address that both websites were registered to is the same address of process registered with the New York Department of State for Total Cable USA. (Opp. to Total Cable at Ex. N.)

4

Total Cable USA's Department of State registration also lists the company's CEO, Ahmodul Barobhuiya, as the appropriate person for service. (*Id.*)

## II. Legal Standard

A party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003). Material facts are those that may affect the outcome of the case. *See Anderson*, 477 U.S. at 248. An issue of fact is considered "genuine" when a reasonable finder of fact could render a verdict in favor of the non-moving party. (*Id.*) In considering a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986) (citing *Anderson*, 477 U.S. at 248). If the Court recognizes any material issues of fact, summary judgment is improper, and the motion must be denied. *See Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985).

If the moving party discharges its burden of proof under Rule 56(c), the non-moving party must then "set forth specific facts showing that there

5

P-049

is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 256. Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. (*Id.* at 247–48.) Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. *Id.* at 248; *see also Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1999) ("When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

### III. Discussion

As an initial matter, defendants' motions for summary judgment do not include a legal memorandum as required by Local Rule 7.1 or a rule 56.1 statement. Both of these failures by counsel, in and of themselves, are proper grounds to deny the motions. *See* Local Rule 56.1 ("Failure to submit such a statement may constitute grounds for denial of the motion."); *Cea v. Access 23 TV*, 2015 WL 5474070 (S.D.N.Y. Sep. 15, 2015) ("The failure to submit a memorandum of law, standing alone, is sufficient cause for granting or denying a motion. It is not necessary to reach the merits.")

6

(citations and quotations omitted); *Corbley v. County of Suffolk*, 45 F. Supp. 3d 276 (E.D.N.Y. 2014) ("The Court finds that Plaintiff's failure to provide a statement of undisputed facts is fatal to its motion for summary judgment, and therefore the motion is denied on this basis.); *United States v. Katz*, 2011 WL 2175787 (S.D.N.Y 2011) (denying motion for summary judgment because party submitted affidavits rather than a rule 56.1 statement); *Wenzhou v. Wanli Food Co. v. Hop Chong Trading Co.*, 2000 WL 964944 (S.D.N.Y. July 11, 2000) (denying motion for summary judgment for failure accompanying legal memorandum). But even putting aside these glaring procedural defects, the motions still fail.

### A. Total Cable

Total Cable USA's motion for summary judgment is based entirely on its claim that it dissolved in May 2016, declared bankruptcy, and never distributed any of the Exclusive Services. (Satish Bhatia Affirmation in Support of Total Cable USA's Motion to Dismiss ("Bhatia Aff.") at ¶ 2.) Total Cable USA claims that "Plaintiff is confused with the words 'Total Cable'" as "there are many corporations that start with the words "Total Cable." (Bhatia Aff. ¶ 9.) Defendant goes so far as to say that Total Cable USA and Total Cable BD have "no[] relation whatsoever" (*Id.* at ¶ 10) and that defendants are "not familiar with Total Cable Bd [sic]." (*Id.* at ¶ 11)

7

P-049

Accordingly, Defendant argues, there is no genuine dispute of material fact because Plaintiff's claims pertain only to Total Cable BD, an entirely distinct entity.

Unsurprisingly, Star Cable's position is that Total Cable USA and Total Cable BD are effectively the same company. In response to the instant motion, Star Cable argues that "there is a clear issue of fact as to whether Total Cable is still operating, albeit now under the name Total Cable BD." (Star Cable's Opposition to Total Cable's Motion to Dismiss ("Opp. to Total Cable") at 1.) This Court agrees.

While the degree to which Total Cable USA and Total Cable BD are in fact connected is unclear, the record is rife with reasons to doubt Total Cable USA's claim that there is "no relation whatsoever" between the two businesses. (Bhatia Aff. ¶ 10.)

Plaintiffs have demonstrated a strong link between the operators of "totalcableusa.com" and the entity Total Cable BD. While Total Cable USA denies creating this website or any other (Bhatia Aff. at ¶ 11), it would be reasonable to disbelieve this claim. The domain "totalcableusa.com," which later became the website for Total Cable BD, was registered to a Habib Rahman — a known representative of Total Cable USA. *See Asia TV USA*, 2018 WL 1626165 at *3. Additionally, the website was registered to a

8

physical address associated with Total Cable USA, as proven by the company's registration with the New York Department of State (Opp. to Total Cable at Ex. N.) The same is true for the domain "totalcablebd.com," which was created later in time. (Opp. to Total Cable at Ex. M.)

Additional facts outline, *supra*, lend support to the theory that the "totalcableusa.com" domain belonged to Total Cable USA, including content on the site relating to Total Cable, Total Cable USA, and Total Cable BD.

There also appears to be overlap among key executives of both companies. Defendant Total Cable USA argues in its Reply that both web domains actually belong to yet another company called Lalon TV Inc. ("Lalon TV"), and thereby cannot belong to Total Cable USA (Total Cable's Reply in Opposition to Plaintiff's Response ("Total Cable Reply") at ¶ 13.) If this is in fact true, this Court is troubled by Barobhuiya's deposition testimony in which he claimed he was "not familiar with Total Cable Bd [sic]." (Bhatia Aff. At ¶ 11.) Barobhuiya was found to be the CEO of both Total Cable USA LLC and Lalon TV in *Asia TV USA, Ltd. v. Total Cable USA LLC.* 2018 WL 1626165 *3 ("Barobhuiya is the CEO of both Total Cable [USA] LLC and Lalon TV, and the address for service of process is the same for both companies.")

9

Plaintiffs allege that "defendants seem to be engaged in a scheme to evade detection of their proper name and ownership." (SAC at ¶ 6.) While the full merits of this argument are not clear at this stage, there certainly remains a genuine dispute of material fact as to who is operating Total Cable BD. Defendant Total Cable USA and its executives have far from exonerated themselves from that charge and for that reason, their motion for summary judgment is dismissed.

### B. 1Stop

With the exception of Somoy TV, 1Stop does not deny distributing the Exclusive Services. (Bhatia Affirmation in Support of 1Stop's Motion for Summary Judgment ("Bhatia 1Stop Aff.") at ¶ 4.) Rather, 1Stop's motion for summary judgment is based on its position that Star Cable does not retain exclusive rights to distribute the Exclusive Services and that 1Stop has sold access to the channels in accordance with its own written agreements with the content owners. (*Id.* at ¶ 2.) 1Stop's motion falls far short of proving its position as a matter of law. The Court shall address each channel in turn:

#### 1. Independent TV

1Stop alleges that Star Cable's exclusive contract with Independent TV was for three years and expired in 2017. (Bhatia 1Stop Aff., at ¶ 6.) It argues that Plaintiff "has not provided any other agreement showing that

10

the [contract] was ever renewed." (*Id.*) However, 1Stop's position is belied by the fact that Paragraph 2 of the relevant contract clearly states that the "[a]greement automatically shall renew for additional three-year Terms, unless either party provides at least 90 days written notice to the other party..." (Plaintiff's Opposition to 1Stop's Motion for Summary Judgment ("Opp. to 1Stop") at Ex. A, ¶ 2.) 1Stop offers no evidence whatsoever to demonstrate that the agreement has ended in a manner consistent with the contract.

1Stop also points to a contract it allegedly entered into with Independent TV in 2013 for a three-year period, with a 1-year automatic renewal provision. (Bhatia 1Stop Aff. at Ex. Q.) Star Cable challenges the authenticity of this contract based on its own agreement with Independent TV, demonstrating an additional clear dispute of material fact. (Plaintiff's Rule 56.1 Statement as to 1Stop's Motion for Summary Judgment ("Plaintiff's 1Stop Rule 56 Statement") at ¶ 18.)

### 2. Jamuna TV

1Stop similarly asserts that Star Cable's contract with Jamuna TV ended in 2017. (Bhatia 1Stop Aff. at ¶ 7.) Again, this position is contradicted by the express terms of Star Cable's contract with Jamuna TV which state

11

P-049

that the agreement automatically renews at the end of the three-year period unless properly terminated by one of the parties. (Opp. to 1Stop at Ex. B.)

1Stop also attaches a letter supposedly from a Jamuna TV executive affirming that 1Stop is their client and that "[n]o other organization has any valid exclusive rights with Jamuna..." (Bhatia 1Stop Aff. at Ex. G.) This letter, addressed "TO WHOM IT MAY CONCERN," is not authenticated, notarized, or certified in anyway. As such, it is inadmissible evidence and will not be considered for purposes of this motion for summary judgment. *See* F.R.C.P. 56(c)(4) ("affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment").

### 3. Channel 16

1Stop asserts, based on the deposition of Saiful Siddique, that Channel 16 is "no longer in circulation and it is not broadcasting." (Bhatia 1Stop Aff. at ¶ 7.) It also provides a copy of a contract between 1Stop and Lalon TV for a period of ten years which predates Star Cable's contract with Channel 16. (*Id.*) Star Cable challenges Siddique's "unsupported claim" that

12

Channel 16 is no longer in business, creating yet another factual dispute. (Plaintiff's 1Stop Rule 56 Statement at ¶ 7.) As 1Stop has not offered any evidence outside a conclusory statement that Channel 16 is no longer operating, this issue of fact is still clearly in dispute. Further, even if Channel 16 was no longer in business, 1Stop does not state when it stopped operating or if its closure predated the relevant date range of this lawsuit.

### 4. mytv

1Stop also provided a letter addressed "To Whom It May Concern," from a mytv executive stating that Star Cable "has no valid legal agreement with [mytv]," and "has absolutely no rights to broadcast or represent mytv channel anywhere in the world." (Bhatia 1Stop Aff. at ex. I.) Like the proffered Jamuna letter, this letter is not authenticated, notarized, or certified in anyway. As such, it is inadmissible evidence and will not be considered for purposes of this motion for summary judgment. F.R.C.P. 56(c)(4); *Raskin*, 125 F.3d at 66.

### 5. Asian TV

1Stop submitted two contracts in its motion that it supposedly entered into with Asian TV for rights to distribute in North America. One contract, dated November 20, 2014, is for the exclusive right to distribute for three years. (Bhatia 1Stop Aff. at Ex. K.) The other is dated June 6, 2016

13

and is for the *non-exclusive* right to distribute for three years. (Bhatia 1Stop Aff. at Ex. L.) Star Cable disputes the authenticity of both these documents for two reasons. (Plaintiff's 1Stop Rule 56 Statement at ¶ 13.) First, Star Cable claims that it entered into an agreement for the exclusive rights to distribute Asian TV's content for an eight-year period beginning November 25, 2014. (*Id.*) Second, Star Cable points out that 1Stop offers no explanation as to why it had negotiated for exclusive distribution rights for three years only to renegotiate, not even two years later, for non-exclusive distribution rights. (*Id.*) There may be a legitimate reason for this, however, there clearly remains a dispute as to the authenticity of the offered contracts.

6. Bangla Vision

With regards to Bangla Vision, 1Stop offered yet another letter addressed, "To Whom It May Concern," this time from a Bangla Vision executive. (Bhatia 1Stop Aff. at Ex. H.) The letter states that Star Cable has "no valid agreement or the rights to broadcast/represent BANGLAVISION." (*Id.*) Once again, the letter is not authenticated, notarized, or certified in anyway. As such, it is inadmissible evidence and will not be considered for purposes of this motion for summary judgment. F.R.C.P. 56(c)(4); *Raskin*, 125 F.3d at 66.

1Stop also submits a contract it supposedly entered into with Bangla Vision for distribution rights for a three-year period beginning September 23, 2014. (Bhatia 1Stop Aff. at Ex. M.) Star Cable points out, and it is clearly stated in the title, that this contract is only applicable to "mobile apps" and thereby irrelevant to Star Cable's IPTV claim. (Opp. to 1Stop at 10-11.) Accordingly, the documents submitted by 1Stop fall far short of demonstrating it should be granted summary judgment with regard to Bangla Vision.

### 7. Ekushey TV

1Stop argues that Star Cable has no valid distribution agreement with Ekushey TV. In support of this position, 1Stop submitted a one-sentence letter from an Ekushey executive to Star Cable, dated August 23, 2016. (Bhatia 1Stop Aff. at Ex. J.) The letter supposedly terminates the distribution agreement between Star Cable and Ekushey. Star Cable challenges the authenticity of this letter based on its utter failure to comply with the procedures outlined in the contract for terminating the agreement.

P-049

(Plaintiff's 1Stop Rule 56 Statement at ¶ 11.) Again, 1Stop's submission clearly fails to sustain its burden of proof for summary judgment.[2]

### 8. Somoy TV

1Stop claims that it is not involved in the sale or distribution of Somoy TV. (Bhatia 1Stop Aff. at ¶ 4.) In support of this position, 1Stop offers no evidence other than a blanket denial. (*Id.*) Unsurprisingly, Star Cable disputes the claim, highlighting yet another dispute as to a material fact in this case. (Plaintiff's 1Stop Rule 56 Statement at ¶ 4.)

## IV. Conclusion

For the foregoing reasons, Defendants have failed to demonstrate that summary judgment is warranted and both motions for summary judgment are **DENIED**. The parties shall file a joint pretrial order within 14 days of this order.

**SO ORDERED.**

Dated: February 12, 2020
Brooklyn, NY

s/ Sterling Johnson, Jr.
_____
Sterling Johnson, Jr., U.S.D.J.

---

[2] Star Cable refers to this channel as "Ekhusey" while Defendants refer to it as "Ekushey." The parties shall clarify the proper spelling of this company to the Court and confirm the correct company is in dispute in their joint pre-trial order.